May it please the Court, Counsel. Good morning, your honors. Elizabeth Dow on behalf of Petitioner Angela Porter, I promise you this case will be much less exciting than the last one, which sounds like you've got your work cut out for you. As more fully set forth in our briefs, while being treated for a work-related injury, which is not at issue here today, the petitioner had been ordered into work conditioning as part of her treatment. And in that work conditioning, she suffered a new injury to her knee. And that is what is at the center of the dispute here before this Court. With the opportunity to hear the witnesses, Arbitrator Hennessey awarded the petitioner and found that the knee injury arose out of and was causally related to her employment. The commission had a split decision, 2-1. And the commission's majority opinion, which is a single paragraph explanation, which does not address either of the medical testimony, either from the treating physician, Dr. Didn't the commission find that the claimant exaggerated some of her testimony? I mean, isn't it a theme underlying their findings that they had some credibility issues with the claimant? That is correct, Your Honor. And although, you know, that is my burden to get up and over here this morning, since I've got a heavy burden of against the manifest weight of the evidence, I would suggest that their finding with regard to the petitioner was incorrect. Clearly, you know, they seem to talk about this exaggeration that she has with regard to the stretching that occurred. But if you look at her testimony, she does talk about that day, which is the date of the incident of August 28th, that she was sore and in pain. She'd gone through four hours of conditioning on the legs. The way that this conditioning worked, she did arms one day and upper extremity one day and lower extremity, you know, the following day. And that at the end of that four hours, she was stretched and said that she felt popping. In her testimony that's supported by the testimony that she gave in front of the commission, it's clear that the commission, excuse me, in front of the arbitrator, it's clear that the commission felt that that was exaggerated. But supporting the petitioner's testimony is Dr. Burra's testimony, which states that, you know, he had been her treater for nearly a year with regard to the elbow. So he has contemporaneous testimony and evidence with regard to her treatment that what she suffered was a traumatic injury to the knee and not a degenerative arthritic type. Let me ask you about that. Because, again, August 20th, 2008 was the day allegedly when this happened, correct? According to the claimant, she testified, I take it you were there, that she was stretched by a therapist named Katie, which caused the problem. And yet the sessions were completed and it indicated that a therapist named Michael Gadomski did the stretching, was the therapist that day. So isn't that an issue? Well, I would submit that the therapist, she had been treated throughout her time at ATI by Katherine, Katie, and by Michael. And that the day of the 28th, her testimony is that she was stretched by Katie, even though the therapy had been done by Michael. That's unrebutted. I mean, ATI, neither Katie nor Michael have any testimony either by deposition or in front of the arbitrator that she was stretched by Katie. That is, you know, that is her testimony, that even though she had worked out with Michael that day, that at the end of that four-hour session, Katie was the one who had stretched her. The problem is she left the voice message, you know, at some point in which she said, and there was a note on it, that I don't know what happened, it just started hurting, which would seem to contradict her unrebutted testimony that it happened when she was stretched by Katie, but nobody called Katie or Michael Gadomski to testify on either side. And then the commission decided, well, it's a failure of proof because of that. Exactly, Your Honor. But I would submit that that testimony with regard to the call is actually a summary of, you know, the ATI does these sort of weekly summaries, and that that's not exactly with regard to, you know, her testimony. I mean, I think that she doesn't know, her testimony before the arbitrator is that she doesn't know she felt the popping during the stretching and that she was sore and in pain with regard to the work condition that day. Isn't there something in the record also, though, that at some point she intimated at least that it happened over the weekend and wasn't associated with the stretching exercises? That, Your Honor, is actually, I think, an incorrect summation by ATI of the phone records, that that is not. It's in quotes in that progress statement, but she supposedly said it's in quotes. I mean, I don't know. Correct, but that does not. It may not correctly use quotation marks, but. That does not accurately reflect what the phone logs actually say. So if you look further in the record, there are the actual phone logs, and she states after the Labor Day weekend that she will not be in because she's still in pain. It does not say that she experienced that pain or that that pain was caused or that incident was over the weekend. And so when you look at the summation, I think that's just an incorrect summation of what the actual phone records state. And those phone records are included in the record. I realize the burden is high here. I mean, but that I think that if you look at the totality of the petitioner's testimony, it is clearly that she experienced pain and this popping on August 28th. She was given ice on that day, that it was, according to Burra's testimony, a traumatic injury, not a degenerative episode with regard to her knee, and that really that testimony is unrebutted, even, I would say, by the ATI records. If you look at the following workout records for ATI, the following day she only works out for three hours, and it's almost exclusively upper body. Does she have any problems with her other knee? No. Answer one question for me, and I think this is important, because you're right. I don't recall that, Your Honor. And he did, he did do, as part of the treatment for this knee, he did do an arthroscopic procedure, and which is the very same procedure that he did for the other knee. I'm not aware of the underlying, the underpinning of his basis that it was a traumatic injury. I have a note here. Dr. Burra's note that on October 8th, 2008, the claimant complained of aching in both knees. Okay, Your Honor. I don't know if you checked that, but. But he, she has not received treatment for both knees. Right, right. I understand that. And he has said through his treatment, I mean, she's had the hemicap placed on that left knee, and not on the right knee. So, I mean, it has not received treatment. But I think that a fair analysis is that she was unconditioned when she went into work conditioning, and that this was. I mean, there could be another explanation, but it does, it is relevant to the issue, so. But she's not receiving treatment for the other knee. Correct, Your Honor. She has degeneration in both knees. Obviously, the knee that's allegedly been injured in work conditioning is much worse. Correct. Correct. So, again, my burden here is a heavy one. But I do think if you look at the record in total, that we have the treating physician who has been with her for a year. He has the exposure to her, contemporaneous analysis. And he really has no sort of self-serving interest in this, in having, you know, his suggested treatment not work out for her. Thank you. Thank you, counsel. Counsel, you may respond. May it please the Court, Your Honor. Counsel. My name is Nathan Bernard. I represent Target. As counsel conceded, this is a very high burden to meet. And there's certainly sufficient. It seems to be getting higher all the time. Absolutely. And there's certainly sufficient evidence in the record, Your Honor, to support the circuit court and the commission decision in denying benefits. What's that evidence? Your Honor, I won't belabor the points in the briefs. And Your Justice has already discussed it. It's the multiple medical records in this case. And this is a unique case because as background, this was a case where it was an accepted elbow claim where the employer paid everything. And it happened at a work hardening thing. So the PT records are meticulously documented on the date of loss, after the date of loss, on the weekend. They even take the voicemail message down and write that down. And then they took very meticulous records. So it's very easy by the evidence, which the commission noted and the circuit court noted. And I'll note the circuit court, under a manifest weight of the evidence standard, actually wrote a decision. They didn't just do an order. And in that decision, they found the claim not credible and that the medical records contradicted the inconsistent testimony. And they specifically cited those medical records, which we alluded to today, that a left knee alleged injury happened over the Labor Day weekend. But it didn't happen at the work hardening condition. In fact, the Argus 28th notes no issues or complaints. And they took meticulous records there, even noting stretching and the exact exercises they did in handwriting. They did it the following day. And as counsel says, she only worked out three hours. But there's also she worked out two to three hours before that, too. And she only did ten visits in total before she actually concluded the work hardening. And likewise, the commissioner, DeNovo, held that the testimony was exaggerated and not supported by the medical records in evidence. And they also specifically cited the evidence that we did. And I won't belabor the point, but it is essentially that it happened over the weekend and that the petitioner's testimony was exaggerated because, as counsel admitted, she didn't really know what happened. She didn't know what happened. And as it goes to, you know, Dr. Burra's testimony, Dr. Burra was given an inconsistent history of injury. Actually, two weeks after the alleged injury, she didn't go to him and say, I heard a pop. She went to him and said, it was just, you know, the exercises at PT. Then a year later, when she was examined by Dr. Walsh, she gave this popping history of injury. So, again, I won't belabor the point as my brief clearly lays it out. But under a manifest way to the evidence, as this court later or earlier today noted, it's the province of the commission to do the testimony and weigh the credibility. And here, the circuit court and the commission carefully considered the testimony. It was reasonable and it was within their sound discretion. There was clear evidence that was relied upon. There was a strong support in the medical records and the testimony evidence. And so there was an adequate basis for the finding. And the circuit court and the commission decision should not be disturbed. So we respectfully ask that you affirm the decision today. I have a question. Her injury was to the elbow, right? Correct. And it was a work-related injury, right? Yes. And what the heck are they doing? Work conditioning on spots and breaks and things like that. It was recommended by her treating doctor, Dr. Burra, to get her back into the general good physical shape. Exactly. To go back to work. So he could clear her to go back to work. And what type of work does she do? She actually was just a stocker, a general worker for Target. And she was hurt opening boxes for the elbow. And interestingly enough, she alleges that her elbow popped when she actually was injured at that time. It's the same allegations as this knee injury. But as the testimony showed, she didn't really know what happened. She said maybe it was the exercises that she did or that maybe she doesn't know or it happened over the weekend. Well, I'm just wondering, is there any rational basis in this program of work conditioning, of lower extremity work conditioning and what she actually does for Target? Well, again, I think it was something where before Dr. Burra could get her back to work, he needed to do a thorough, to decide whether she was capable of returning to work. But as a job description goes, I don't think the evidence has a job description in the evidence. I'm just guessing it seems rather irrational, the whole thing. Absolutely. The program. Okay. Thank you, counsel. Thank you, counsel, both, for your arguments in this matter this morning. Oh, I'm sorry. No, please do. Please come forward. Your Honor, I'll make two very quick points. Again, I think this is not an extensive record. I'm sure that you all have ample opportunity to review it. One point that I would note is that repeatedly, for example, Dr. Walsh and the respondents keep talking about medical records. And when they talk about medical records, what they're really talking about are the ATI summations. I'm not saying that they don't have any value, but I understand that those are summaries made by, you know, therapists. And I would ask that the court check the box. Yeah, exactly. And I realize that they may be meticulous, but, you know, the commission relies heavily on those and really just gives the backhand to Dr. Burra's testimony and the actual medical records. So, you know, I understand that the whole pot may be considered medical records, but really it is against the manifest weight of Dr. Burra's testimony and Dr. Burra's records. And I've already addressed and the final thing I'll state. I'm sorry. Excuse me. But Dr. Burra is relying on the history she gave him to reach his opinions. Correct. And basically they say we don't believe the history she gave. That's clearly what the respondent is saying is that they don't believe the history that they gave. That's what the commission said. Right. And that finally I would also recommend that when looking at the ATI records, please note that the individual contemporaneous daily logs are not comport with the summaries in all instances. So they do these weekly summaries, which I'm assuming are submitted to Dr. Burra. They don't send all the documents. And it's only in that summation that it is summarized that this occurred over the weekend. No, the answer is that she actually called over the weekend. And so that that is really, I think if you look at it, what the evidence is in this case. And that led, that summation led to Dr. Walsh's opinion? I think that Dr. Walsh, interestingly enough, says he also relied on the medical records, but then goes on to only discuss the ATI records. Okay. And so I think your assumption has to be in that case that he, too, is saying, well, you know, this phone record, which is, again, summarized incorrectly. If you go back and look at the actual phone log incorrectly, I think it's a cornerstone of his opinion, which, again, we would submit as incorrect opinion in this case. That it occurred over the weekend. Correct. Thank you, Your Honors. Thank you, Counsel. Again, a written disposition will issue.